Arnold L. Graff (SBN 13527)
agraff@piteduncan.com
Jesse A. P. Baker (SBN 13418)
Jbaker@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR7

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF UTAH - SALT LAKE CITY

In re

JAY TERRY FRANDSEN,

      Debtor.

Case No. 10-28974

**NOTICE OF TRANSFER OF CLAIM #3**

The undersigned hereby gives notice of the assignment and transfer of the Proof of Claim #3 and submits the following information:

Name and address of transferor:

    GMAC Mortgage, LLC
    3451 Hammond Avenue
    P.O. Box 780
    Waterloo, IA 50704-0780

Name and address of transferee:

    U.S. Bank National Association,
    as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR7
    , c/o Ocwen Loan Servicing, LLC

- 1 -

| Name and address where **notices** to transferee should be sent: | Name and address where transferee **payments** should be sent: |
|---|---|
| Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| ATTN: Bankruptcy Department | ATTN: Payment Processing |
| 1100 Virginia Drive, Suite 175 | 3451 Hammond Avenue |
| Fort Washington, PA 19034 | Waterloo, IA 50702 |
| Phone: 1-800-850-4622 | Phone: 1-800-850-4622 |

Amount of claim being transferred $204,702.48.

Dated: April 29, 2013                           PITE DUNCAN, LLP

                                                /s/ Jesse A. P. Baker

                                                Attorneys for U.S. Bank National
                                                Association, as Trustee for Greenpoint
                                                Mortgage Funding Trust Mortgage Pass-
                                                Through Certificates, Series 2006-AR7

- 2 -

UNITED STATES BANKRUPTCY COURT

DISTRICT OF UTAH - SALT LAKE CITY

CASE NO. 10-28974

CERTIFICATE OF SERVICE BY MAIL

I, Agata B. Turowska, am a resident of San Diego, California, and I am over the age of eighteen (18) years, and not a party to the within action. My business address is 4375 Jutland Drive, Suite 200; P.O. Box 17933, San Diego, CA 92177-0933.

I served the attached NOTICE OF TRANSFER OF CLAIM #3 by placing a true copy thereof in an envelope addressed to:

SEE ATTACHED SERVICE LIST

which envelope was then sealed and postage fully prepaid thereon, and thereafter on April 29, 2013, deposited in the United States Mail at San Diego, California. There is regular delivery service between the place of mailing and the place so addressed by the United States Mail.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 29, 2013                    /s/Agata B. Turowska
                                          AGATA B. TUROWSKA

**SERVICE LIST**

**DEBTOR(S)**

Jay Terry Frandsen
3169 Rendezvous Way
West Valley City, UT 84120

**DEBTOR(S) ATTORNEY**

David M. Cook
716 East 4500 South
Suite N240
Salt Lake City, UT 84107

**CHAPTER 13 TRUSTEE**

Kevin R. Anderson
405 South Main Street
Suite 600
Salt Lake City, UT 84111

**U.S. TRUSTEE**

Department of Justice
District of Utah - Salt Lake City
Ken Garff Bldg.
405 South Main Street
Ste 300
Salt Lake City, UT 84111

# ADJUSTABLE RATE NOTE
## Monthly Treasury Average Index - Payment and Rate Caps

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

September 5, 2006              Orem                        Utah
[Date]                         [City]                      [State]

3169 S Rendezvous Way, West Valley City, UT  84120

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $188,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **GreenPoint Mortgage Funding, Inc.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of **November, 2006**, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than 12.000%.

**(D) Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board entitled "Selected Interest Rates (h.15)" (the "Monthly Yields").

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **three and one-half** percentage points ( 3.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

OPTNUT-OA (06/06)  GreenPoint Mortgage Funding, Inc.

Page 1 of 6

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2006**
I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 79363, City of Industry, CA 91716-9363** or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$604.68**
This amount may change.

#### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first day of **November, 2007**, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

#### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last monthly payment due before the Payment Change Date.

#### (E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

#### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to 110% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

#### (G) Required Full Payment

On **11/01/2011** and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I will also begin paying the Full Payment as my monthly payment on the final Payment Change Date.



### 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.



OPTNUT-OA (06/06) GreenPoint Mortgage Funding, Inc.

Page 3 of 6

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITHOUT RECOURSE
PAY TO THE ORDER OF:

_____
GreenPoint Mortgage Funding, Inc.

_____ℋ_(_____
Thomas K. Mitchell
Vice President

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  
Jay T. Frandsen                -Borrower

_____ (Seal)  
                               -Borrower

_____ (Seal)  
                               -Borrower

_____ (Seal)  
                               -Borrower

_____ (Seal)  
                               -Borrower

_____ (Seal)  
                               -Borrower

_____ (Seal)  
                               -Borrower

_____ (Seal)  
                               -Borrower

*[Sign Original Only]*

# INTERIM INTEREST ADDENDUM TO
# ADJUSTABLE RATE NOTE

This Addendum is made this **5th day of September, 2006**, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") of the same date herewith, given by undersigned ("Borrower") to evidence Borrower's indebtedness to **GreenPoint Mortgage Funding, Inc.** its successors and assigns ("Lender") which indebtedness is secured by a Security Instrument and covering the property described in the Security Instrument and located at:

**3169 S Rendezvous Way, West Valley City, UT  84120**

Notwithstanding anything to the contrary set forth in the Note, Rider and Security Instrument, Lender and Borrower hereby acknowledge and agree to the following.

    2.     **INTEREST**
        (A)    **Interest Rate**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) of the Note, I will pay interest at a yearly rate of **8.125 %**. Thereafter, I will pay interest at a yearly rate of **1.000%**, until the first Interest Change Date (as defined in Section 2(B) of the Note).

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

All other provisions of the Note, Rider and Security Instrument are unchanged by this Addendum and remain in full force and effect.

_____ (Borrower)     _____ (Borrower)
Jay T Frandsen

_____ (Borrower)     _____ (Borrower)

_____ (Borrower)     _____ (Borrower)

_____ (Borrower)     _____ (Borrower)

# PREPAYMENT FEE ALLONGE

Loan Number

This Prepayment Fee Allonge ("Allonge") is made this **5th** day of **September, 2006**, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled **Borrower's Right to Prepay** is amended by adding the following paragraph as the last paragraph of such section:

If I make a Prepayment within **3 years** of the date of this Note, I will pay a Prepayment fee on the aggregate Prepayments made within any consecutive twelve month period which exceed 20% of the original Principal amount stated in the Note. The Prepayment fee I will pay shall be an amount equal to six (6) months advance interest on the amount of the Prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the Prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. The interest rate used to calculate the Prepayment fee will be the interest rate in effect at the time of the Prepayment. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the **3rd Year** anniversary after I execute this Note, and in no event will such a charge be made if it violates state or federal law.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | | |
|---|---|---|
| _____ (Borrower) Jay D Frandsen | | _____ (Borrower) |
| _____ (Borrower) | | _____ (Borrower) |
| _____ (Borrower) | | _____ (Borrower) |
| _____ (Borrower) | | _____ (Borrower) |

*[Sign Original Only]*

## GMAC MORTGAGE, LLC

### CERTIFICATE OF ASSISTANT SECRETARY

I, Jennifer Shank, Assistant Secretary of GMAC Mortgage, LLC (the "Company"), hereby certify that the following is a true and correct copy of the resolution(s) adopted by the Board of Directors of the Company by the Unanimous Written Consent dated March 7, 2013, which resolution(s) I certify to be in full force and effect on the date hereof.

**WHEREAS,** the Company sold certain mortgage loans and mortgage loan servicing rights to Ocwen Loan Servicing, LLC ("Ocwen") pursuant to the Asset Purchase Agreement dated November 2, 2012, as amended (the "Asset Purchase Agreement") by and between Ocwen, the Company and certain other subsidiaries of Residential Capital, LLC ("ResCap");

**WHEREAS,** in addition to the Asset Purchase Agreement, the Company and certain other subsidiaries of ResCap entered into Servicing and Subservicing Agreements (the "Servicing Agreements") with Ocwen, whereby Ocwen, as Servicer or Subservicer, is permitted to carry out the servicing actions on behalf of the Company stated on the Authority Matrix, Schedule I, to the Servicing Agreements, attached hereto as same;

**WHEREAS,** management of the Company recommends that certain officers of Ocwen be delegated specific signature authority for the purpose of performing all acts and executing all documents in the name of the Company, or any current or former trade name registered to the Company, necessary and incidental to implement the terms of the Asset Purchase Agreement and Servicing Agreements, related to the mortgage loans and mortgage servicing rights sold by the Company to Ocwen.

**THEREFORE, BE IT**

**RESOLVED,** that the appointed officers of Ocwen ("Ocwen Officers") listed on the attached Exhibit A are solely authorized for the purpose of performing all acts and executing all documents in the name of the Company, or any current or former trade name registered to the Company, necessary and incidental to implement the Asset Purchase Agreement and Servicing Agreements, or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan, including but not limited to:

1. Foreclosing delinquent loans or discontinuing such foreclosure proceedings, including, but not limited to, the execution of notices of default, notices of sale, assignments of bids, and assignments of deficiency judgments, and appearing in and prosecuting bankruptcy proceedings;

*GMACM - Ocwen Signing Authority*
*3.7.2013 Board Consent*

2. Selling, transferring or otherwise disposing of real property acquired through foreclosure or otherwise, including, but not limited to, executing all contracts, agreements, deeds, assignments or other instruments necessary to effect such sale, transfer or disposition, and receiving proceeds and endorsing checks made payable to the order of the Company from such proceedings;

3. Preparing, executing, and delivering affidavits, certifications, declarations, stipulations, waivers of any conflict of interest, verifications, proofs of claim, satisfactions, cancellations, discharges, lost note instruments, or full or partial releases of lien, subordination agreements, modification agreements, assumption agreements, substitutions of trustees under deeds of trust, and UCC-3 Continuation Statements;

4. Endorsing title certificates or promissory notes and executing assignments of mortgages, deeds of trust, deeds to secure debt, and other security instruments securing said promissory notes;

5. Endorsing insurance policies or insurance proceeds checks and mortgage payment checks to the order of the Company; and

6. Any and all such other acts of any kind and nature whatsoever that are necessary or appropriate to implement the transactions contemplated by the Asset Purchase Agreement and Servicing Agreements or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan, including, without limitation, delegating the authority granted herein to necessary third parties, including but not limited to law firms or trust companies and each of their officers, directors, employees, agents and assigns.

**RESOLVED,** that updates to the list of Ocwen Officers may be made by Ocwen submitting an updated Certificate of Appointment of Third Parties, substantially in the form attached hereto as Exhibit A, to the Secretary or an Assistant Secretary of the Company, with the same being subject to the acceptance and approval of an Executive Officer of the Company.

**RESOLVED,** that any and all actions taken since February 16, 2013 by the Ocwen Officers listed on Exhibit A, pursuant to this Consent, are hereby ratified and affirmed as actions taken for and on behalf of the Company and in furtherance of the purposes of these resolutions.

**RESOLVED,** that the authority granted in the foregoing resolutions shall expire on October 31, 2013.

**RESOLVED,** that the foregoing resolutions replace any previous resolutions approved by the Board of Directors of the Company relating to the same subject matter.

*GMACM - Ocwen Signing Authority*
*3.7.2013 Board Consent*

**IN WITNESS WHEREOF**, I have hereunto set my hand, said Assistant Secretary of the Company, this  8  day of March, 20 13

_____
Jennifer Shank, Assistant Secretary

- 3 -

EXHIBIT A

**Request for Appointment of Third Party Officers**

To:         Secretary or Assistant Secretary, GMAC Mortgage, LLC

From:       Ocwen Loan Servicing, LLC

            *[signature: Joseph A. Pensabene]*
            Joseph A. Pensabene,
            *Executive Vice President, Chief Servicing Officer*

Date:       March 7, 2013

---

This Request for Appointment of Third Party Officers is delivered pursuant to the Written Consent of Directors, in lieu of a Meeting of the Board of Directors, of GMAC Mortgage, LLC, (the "Company"), dated March 7, 2013 (the "Resolutions"), and supersedes and replaces any prior Certificate of Appointment of Third Parties (f/k/a Certificate of Authorization) relating to Ocwen Loan Servicing, LLC ("Ocwen").

It is hereby requested that, effective as of March 7, 2013, the following officers of Ocwen are delegated as officers of the Company, solely for the purposes set forth in the Resolutions and may sign for and on behalf of the Company under the Authorized Officer title(s) set forth opposite his/her respective name:

| Name | Title |
|---|---|
| Bohlken, Jill | Vice President |
| Hoecker, Charles | Vice President |
| Meier, Susan | Vice President |
| Mongelluzzo, John | Vice President |
| Berry, Cynthia L. | Assistant Vice President |
| Delfs, Chad | Assistant Vice President |
| Hickson, Vickie | Assistant Vice President |
| Kelleher, Patricia | Assistant Vice President |
| Palmer, Kenneth | Assistant Vice President |
| Aplara- Carrier, Amber | Authorized Officer |
| Allison, Karilee | Authorized Officer |
| Anders, Linda | Authorized Officer |
| Arndt, Barbara | Authorized Officer |
| Arnold, Ashley | Authorized Officer |
| Arrington, Evette | Authorized Officer |
| Augustine, Albert | Authorized Officer |
| Ball, Elaine | Authorized Officer |
| Bensend, Scott | Authorized Officer |
| Bessellieu, Geneva | Authorized Officer |
| Blake, Dwight | Authorized Officer |

1

*GMACM, Ocwen Officers*
*March 7, 2013*

| | |
|---|---|
| Bocresion, Sewit | Authorized Officer |
| Bowie, Dionne | Authorized Officer |
| Boyd, Yvonne K. | Authorized Officer |
| Bramow, James J. | Authorized Officer |
| Broome, James | Authorized Officer |
| Broughton, Sandra | Authorized Officer |
| Brown, Kimberly | Authorized Officer |
| Cameron, Alison | Authorized Officer |
| Catrino, Daniel | Authorized Officer |
| Clark, Lisa | Authorized Officer |
| Cochran, Caroline | Authorized Officer |
| Cropper, Yolanda | Authorized Officer |
| Cunningham, Justin | Authorized Officer |
| Czerwin, Eric | Authorized Officer |
| Dasch, Lori Ann | Authorized Officer |
| Davidson, Renae | Authorized Officer |
| Deendayal, Shaneza | Authorized Officer |
| Delfs, Jody | Authorized Officer |
| Dickinson, Paul | Authorized Officer |
| Douglas, Annyella M. | Authorized Officer |
| Dufner, Edward | Authorized Officer |
| Dukes, Lepketia | Authorized Officer |
| Dunn, Anthony | Authorized Officer |
| Dunn, Jeffrey | Authorized Officer |
| Durham, Kamilah K. | Authorized Officer |
| Feagins, Sherrell | Authorized Officer |
| Flannery, Sean | Authorized Officer |
| Fleischer, Sharyn | Authorized Officer |
| Frost, Barbara | Authorized Officer |
| Gary, Patricia J. | Authorized Officer |
| Gerhart, Alana | Authorized Officer |
| Graham. Faye | Authorized Officer |
| Gruber, Albert | Authorized Officer |
| Hanson, Lucas | Authorized Officer |
| Hardy, Freddie | Authorized Officer |
| Harris, Darryl | Authorized Officer |
| Harris, Steven L. | Authorized Officer |
| Hartkopp, Crystal | Authorized Officer |
| Hartnett, Bryan | Authorized Officer |
| Heine, Ann Renee | Authorized Officer |
| Heitmann, Dawn M. | Authorized Officer |

2

*GMACM, Ocwen Officers*
*March 7, 2013*

| | |
|---|---|
| Herman, Ginamarie | Authorized Officer |
| Hostetler, Karen | Authorized Officer |
| Humpal, Patricia S. | Authorized Officer |
| Hynes, Michelle A. | Authorized Officer |
| Iwanyshyn, Steven F. | Authorized Officer |
| Jensen, Erin | Authorized Officer |
| Johnson, Tamika | Authorized Officer |
| Johnston, Michael C. | Authorized Officer |
| Jordan, Katrina | Authorized Officer |
| Juel, Jared | Authorized Officer |
| Julion, Charlotte E. | Authorized Officer |
| Kachhi, Mark D. | Authorized Officer |
| Karns, Heidi | Authorized Officer |
| Kastli, Rhonda | Authorized Officer |
| Kaur, Varinderjit | Authorized Officer |
| Keeley, Jacqueline | Authorized Officer |
| Kennedy, Thomas E. | Authorized Officer |
| King, Matthew T. | Authorized Officer |
| Kirkpatrick, Ericka | Authorized Officer |
| Knebel, Andrew | Authorized Officer |
| Koehn, Tobias | Authorized Officer |
| Kosik, Lisa | Authorized Officer |
| Kuhrt, Cathy | Authorized Officer |
| Kunkle, Krystal | Authorized Officer |
| Larson, Brett | Authorized Officer |
| Ledesma, Katelyn | Authorized Officer |
| Lewis, Derien | Authorized Officer |
| Long, William | Authorized Officer |
| Lyons, Joseph | Authorized Officer |
| Lyons, Robert | Authorized Officer |
| Manchester, Wanda | Authorized Officer |
| McCauley, Katelyn | Authorized Officer |
| McDermott, John | Authorized Officer |
| McLaughlin, John | Authorized Officer |
| McLaughlin, Wendy | Authorized Officer |
| Mechalas, Heather | Authorized Officer |
| Miller, Mary A. | Authorized Officer |
| Miller, Stephanie J. | Authorized Officer |
| Montgomery, Lacey A. | Authorized Officer |
| Moore, Michelle R. | Authorized Officer |
| Moore, Rachel | Authorized Officer |

3

*GMACM, Ocwen Officers*
*March 7, 2013*

| | |
|---|---|
| Morrow, William | Authorized Officer |
| Mullen, Jane | Authorized Officer |
| Nelson, Sally | Authorized Officer |
| Niedert, Ginger | Authorized Officer |
| Nitkiewicz, Johnathan D. | Authorized Officer |
| Nocero, Peter | Authorized Officer |
| O'Connor, Jill | Authorized Officer |
| Olson, Andrea | Authorized Officer |
| Olson, Teresa | Authorized Officer |
| Osborne, Cassie | Authorized Officer |
| Owens, Ann Marie A. | Authorized Officer |
| Pace, Marcell G. | Authorized Officer |
| Palmer, Decari | Authorized Officer |
| Paolucci, Megan | Authorized Officer |
| Pasky-Forgacic, Michelle | Authorized Officer |
| Petrillo, Heather | Authorized Officer |
| Piccone, Jeanette | Authorized Officer |
| Pio, Jr., Michael R. | Authorized Officer |
| Pospisil, Vicki | Authorized Officer |
| Preysman, Vadim | Authorized Officer |
| Raysor-Winstead, Tanya Renee | Authorized Officer |
| Rhoads, Stephanie | Authorized Officer |
| Robbins, Christina | Authorized Officer |
| Roney, Shirley | Authorized Officer |
| Santin, Kathy | Authorized Officer |
| Scanlan, Kelly | Authorized Officer |
| Schmidt, Michele | Authorized Officer |
| Seiberlich, Barbara | Authorized Officer |
| Shea, Danielle | Authorized Officer |
| Short, Sarah | Authorized Officer |
| Slay, Carolyn | Authorized Officer |
| Smith, Karen | Authorized Officer |
| Smith, Keli D. | Authorized Officer |
| Smoot, Mira | Authorized Officer |
| Sperbeck, Jaime M | Authorized Officer |
| Stammer, Rachael A. | Authorized Officer |
| Stanley, Davida | Authorized Officer |
| Storey, Marlee | Authorized Officer |
| Swenson, Amanda | Authorized Officer |
| Taylor, Lindsey | Authorized Officer |
| Thompson, Duane | Authorized Officer |

4

*GMACM, Ocwen Officers*
*March 7, 2013*

| Name | Title |
|---|---|
| Thorogood, Tyrone | Authorized Officer |
| Treloar, Michelle | Authorized Officer |
| Turner, Shelby | Authorized Officer |
| Turner, Susan | Authorized Officer |
| Tyson, Helen | Authorized Officer |
| Uhlenhopp, Lynette | Authorized Officer |
| Upson, Natasha | Authorized Officer |
| Van Osten, Elizabeth K. | Authorized Officer |
| Venables, Cynthia | Authorized Officer |
| Vernitsky, Pei-i | Authorized Officer |
| Volker, Taylor | Authorized Officer |
| Walker, Kisha | Authorized Officer |
| Wilson, Douglass | Authorized Officer |
| Wilson, Kristine K. | Authorized Officer |
| Wright, Melody | Authorized Officer |
| Yamoah, Janine | Authorized Officer |
| Young, Cheryl | Authorized Officer |
| Zak, Colleen | Authorized Officer |

**Approved and Accepted by:**

X _[signature]_
Executive Officer of the Company

5